Lawrence P. Eagel (LE 4505)
Raymond A. Bragar (RB 1780)
BRAGAR WEXLER EAGEL & SQUIRE, PC
885 Third Avenue, Suite 3040
New York, NY 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
*Attorneys for Plaintiff*

**JUDGE BAER**

**09 CV 2685**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HAMMERSTONE NV, INC., LWP1 INC., JAMES
LISSETTE, on behalf of his IRA and his children,
Weston Lissette and Emerson Lissette, HANNAH W.
LISSETTE, on behalf of her IRA, MATRIX
CAPITAL GROUP, STEPHEN J. SHAPIRO,
ASSENT, LLC and DENK, INC.

Civ. 09 CV 2685 (HB)
ECF Case

RECEIVED MAR 24 2009 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiffs,

**COMPLAINT**

v.

**Jury Trial Demanded**

MICHAEL J. HOFFMAN and WALTER S. SOBON,

Defendants.

---

Plaintiffs Hammerstone NV, Inc. ("Hammerstone"), LWP1, Inc. ("LWP1"), James Lissette, on behalf of his IRA and his children, Weston Lissette and Emerson Lissette, ("Lissette"), Hannah W. Lissette on behalf of her IRA ("Hannah"), Matrix Capital Group ("Matrix"), Stephen J. Shapiro ("Shapiro"), Assent, LLC ("Assent") and Denk, Inc. ("Denk"), by their undersigned counsel, complaining of defendants, allege, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is an action against Michael J Hoffman, the President and Chief Executive Officer of Constar International, Inc. ("Constar"), and Walter S. Sobon, Constar's Executive Vice President, for securities fraud arising from defendants' material omissions and

misstatements regarding Constar's financial condition and their undisclosed plans to restructure

Constar's indebtedness by replacing the current equity holders with new equity issued to

bondholders in return for cancelling Constar's bonds. Defendants had made such plans, and had

a duty to disclose their plans as a material event on or prior to October 28, 2008. Defendants

omitted to disclose those plans then and in statements made on November 14, 2008 in a Form

10-Q filed with the Securities and Exchange Commission ("SEC"), a press release and earnings

telephone conference call on the same day, and statements made on December 9, 2008 in a Form

8-K filed with the SEC. On December 30, 2008, plaintiffs learned, for the first time, that a

proposed debt for equity swap would eliminate the current equity and not just dilute it. During

the period from October 28, 2008 through December 29, 2008, plaintiffs collectively purchased

2,748,000 shares of Constar common stock ("Constar Stock") at prices ranging from $.15 to

$.59. As a direct result of the market learning the truth about Constar's true financial condition

and plans, the price of the Constar Stock declined to 2 cents a share causing plaintiffs to suffer

substantial losses on their investment in Constar.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to Section 27

of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa and 28 U.S.C. §

1331. The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act as

amended, 15 U.S.C. § 78j(b) and § 78t(a) and rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated

thereunder.

3.      Venue is proper in this district pursuant to Section 27 of the Exchange Act.

4.      In connection with the acts, conduct, and other wrongs alleged in this complaint,

the defendants, directly and indirectly, used the means and instrumentalities of interstate

2

commerce, including the mail and telephone communications.

## THE PARTIES

5.      Plaintiff Hammerstone purchased Constar Stock from October 28, 2008 through December 29, 2008 as set forth on Exhibit A, and was damaged as a result of the market learning the truth about Constar's true financial condition.

6.      Plaintiff LWP1 purchased Constar Stock from October 28, 2008 through December 29, 2008 as set forth on Exhibit B, and was damaged as a result of the market learning the truth about Constar's true financial condition.

7.      Plaintiff Lissette for his IRA and on behalf of his minor children, Weston and Emerson, purchased Constar Stock from October 28, 2008 through December 29, 2008 as set forth on Exhibit C, and was damaged as a result of the market learning the truth about Constar's true financial condition.

8.      Plaintiff Hannah for her IRA purchased Constar Stock from October 28, 2008 through December 29, 2008 as set forth on Exhibit D, and was damaged as a result of the market learning the truth about Constar's true financial condition.

9.      Plaintiff Assent purchased Constar Stock from October 28, 2008 through December 29, 2008 as set forth on Exhibit E, and was damaged as a result of the market learning the truth about Constar's true financial condition.

10.      Plaintiff Matrix purchased Constar Stock from October 28, 2008 through December 29, 2008 as set forth on Exhibit F, and was damaged as a result of the market learning the truth about Constar's true financial condition.

11.      Plaintiff Shapiro purchased Constar Stock from October 28, 2008 through December 29, 2008 as set forth on Exhibit G, and was damaged as a result of the market learning

the truth about Constar's true financial condition.

12.     Plaintiff Denk purchased Constar Stock from October 28, 2008 through

December 29, 2008 as set forth on Exhibit H, and was damaged as a result of the market learning

the truth about Constar's true financial condition.

13.     Constar is a Delaware Corporation with a principal place of business in

Philadelphia, PA. Constar is in the business of the manufacture and sale of PET packaging

products. On December 30, 2008, Constar filed a voluntary petition in bankruptcy with the

United States Bankruptcy Court for the District of Delaware.

14.     Defendant Michael J. Hoffman ("Hoffman") has been Chairman and President of

Constar since May, 2002.

15.     Defendant Walter S. Sobon ("Sobon") has been Executive Vice President and

Chief Financial Officer of Constar since December, 2005.

16.     The defendants named herein, by reason of their status as officers and executives

have at all relevant times had the power and influence, and did in fact control and influence and

cause or allow Constar to engage in the unlawful acts and conduct complained of herein. Each

of the defendants is liable as a direct participant in, or responsible for, the wrongs complained of

herein.

## FACTS

17.     As Constar's 2007 SEC Form 10-K explains:

> Constar International Inc. (the "Company" or "Constar") is a global
> producer of PET, or polyethylene terephthalate, plastic containers for food,
> beverages, and other end use applications. Constar manufactures PET containers
> for conventional PET applications in soft drinks and water and for custom PET
> applications. Custom PET container applications include food, juices, teas, sport
> drinks, new age beverages household chemicals, beer and flavored alcoholic
> beverages, most of which require a combination of advanced technologies,

4

processing now-how and innovative designs. Beverage categories dominate the
PET market. The Company also produces plastic closures and other non-PET
containers (closures and extrusion blow mold containers) representing
approximately 4% of sales in 2007.

Constar SEC Form 10-K, filed 3/31/2008, at 3.

**Misrepresentations and Omissions**

18.     Prior to October 28, 2008, defendants and an ad hoc committee of Constar

Bondholders commenced informal meetings to discuss the restructuring of Constar's

indebtedness. By October 28, 2008, defendants had determined that they would propose to, or

entertain a proposal from, the bondholders a restructuring that would involve an exchange of

equity for debt, and the elimination of the rights of existing Constar equity holders.

19.     On October 28, 2008, defendants and Constar's bondholders formally met and

entertained the proposed conversion of the Senior Subordinate Notes into new equity of Constar,

and the elimination of Constar's existing equity.   Constar made no public disclosure of this

proposal.

20.     To the contrary, on November 14, 2008, defendants participated in a telephone

conference call with, among others, plaintiff James Lissette. In that telephone call, (a) defendant

Hoffman stated that Constar was contemplating a debt for equity swap and had hired a financial

advisor to evaluate the opportunity.  Mr. Hoffman also stated that Constar was able to manage

working capital and improve liquidity; and (b) defendant Sobon stated that the proposed debt for

equity swap was to strengthen Constar's balance sheet and preserve and create value and that

Constar has "excess liquidity to make the interest payments on both the secured and unsecured

debt and continue to invest in our business."

21.     Both Hoffman and Sobon knew that the debt for equity swap would eliminate the

position of the current equity holders and that Constar did not intend to make any more interest

payments on its unsecured debt because the prospective swap would make such a payment unnecessary. Hoffman's and Sobon's statements recklessly lulled plaintiffs into a false sense of security that the equity swap would benefit the entire company, including the current equity holders, and Sobon's statement about liquidity to make unsecured debt payments was made to further hide defendants' plans to restructure Constar to preserve their jobs without informing plaintiffs of the perils of purchasing more equity. Rather, defendants' statements were intended to and did induce plaintiffs to purchase more equity because of the prospective debt reduction and Constar's supposed positive liquidity position

22.    Plaintiffs reasonably relied on defendants' statements in the telephone conference call and the related press release in making additional purchases of Constar Stock.

**Stock Purchases and Share Price**

23.    On October 28, 2008, the day of the formal meeting between defendants and Constar's bondholders, Constar Stock closed at $.41 per share.

24.    Constar filed an 8-K on November 26, 2008, executed by Sobon and prepared or reviewed by Hoffman, the Wednesday before Thanksgiving. The 8-K stated that Constar was not making a December 1, 2008 scheduled interest payment on its subordinated debt, which would also be a default under Constar's agreement with its secured creditors. However, Constar also announced in the 8-K that it had entered into a forbearance agreement with its secured creditors that they would not take any action as a result of the default in not paying its December 1st subordinated debt interest payment. The price of Constar at the close on November 26, 2008 was 41.9 cents a share. On the Friday, November 28, 2008, the price of Constar closed at 32 cents a share and on Monday, December 1, 2008 the price of Constar closed at 17 cents a share.

25.    On December 9, 2008, Constar announced that it had reached an agreement with

6

its Senior Subordinated Note Holders to convert the debt into equity and made a major

presentation to investors as to the benefits to Constar from this conversion. ("Investor

Presentation") The Investor Presentation was filed with the SEC on December 12, 2008 as an

exhibit to a form 8K executed by Sobon and prepared or reviewed by Hoffman. The Overview of

the Investor Presentation  highlighted Constar's strengths:

> "Low-cost production for conventional and custom products ("Best Cost
> Producer").
>
> Competitive production assets available for custom growth following reduction in
> Pepsi volume in 2009.
>
> Blue chip customer base of consumer packaged goods companies.
>
> The PET bottle sector of the packaging industry is a large and growing market.
>
> Significant pipeline of conversion opportunities from glass to PET in major
> product categories
>
> Technology leader: Proven track record as a pioneer and leader in PET bottle
> design and technology with industry-leading technology that is relevant to market
> needs.
>
> A strategy oriented towards profitable organic growth based on food and beverage
> conversions using Constar's technologies.
>
> Historical risks mitigated by recent/ongoing progress in contract negotiations and
> changes in business mix.
>
> Opportunity to create value with the proposed debt for equity exchange
>
> Risk of business losses if customer confidence is not rapidly secured.
>
> Ability to pass through substantially all resin cost changes and freight cost
> changes, and approximately 65% if energy cost changes.
>
> Strong, experienced management team."

Neither the Investor Presentation nor the 8-K to which it was attached disclosed that the debt for

equity exchange was conditioned on the cancellation of the current equity, rendering it virtually

worthless.  Rather the entire tone of the Investor Presentation was that Constar had excellent prospects and the value of current equity would be enhanced by converting certain debt to equity, even though the current equity would be diluted.

26.     It was not until December 30, 2008 that Constar issued a press release that announced that Constar was filing a pre-packaged chapter XI bankruptcy to implement its agreement with a majority of the holders of the Senior Subordinated Notes providing for the conversion of all of the Senior Subordinated Debt into all of the equity of the reorganized debtors, and cancelling the existing equity owned by plaintiffs and other common shareholders.

27. On December 29, 2008, the price of Constar shares closed at 15 cents a share. On December 30, 2008, the price of Constar stock dropped to 4 cents a share. Thereafter the price of Constar stock reached a high of 7.2 cents a share, but by the end of January, 2009 had settled at 2 cents a share.

## SCIENTER

28.     Defendants were aware ever since October 28, 2008 of their plans to cancel the current equity and Constar's intention not to meet its December 1st subordinated interest obligations.

29.     Defendants knowingly made the misstatements and omissions of material facts regarding the Constar Stock, for the purpose of protecting the price of the Constar Stock, and for the purpose of protecting their bonuses and expected share of equity in the reorganized Constar.

30.     Alternatively, to the extent defendants, or either one of them, did not have actual knowledge of the falsity and misleading nature of the misstatements and omissions regarding the cancellation of the existing equity and the plan not pay the interest payment, their conduct was reckless, given their access to, control over, and responsibility for the financial affairs of Constar.

8

## CLAIMS FOR RELIEF

### COUNT I

**VIOLATION OF § 10(b) of the 1934 ACT
AND RULE 10b-5 PROMULGATED THEREUNDER**

31.    Plaintiffs repeat and reallege the allegations of paragraphs 1-30 as if fully set forth herein.

32.    From October 28 through December 29, 2008, defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and did: (i) deceive the investing public, including plaintiffs; (ii) artificially inflate and maintain the market price of the Constar Stock; and (iii) cause plaintiffs to purchase the Constar Stock at inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants took the actions set forth herein.

33.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and/or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers and/or acquirers of the Constar Stock and which maintained artificially high market prices for the Constar Stock in violation of § 10(b) of the 1934 Act, 15 U.S.C. 78j(b), and rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

34.    In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors, in compliance with the integrated

disclosure provisions of the SEC as embodied in SEC Regulations S-X (17 C.F.R. § 210.01 *et seq.*) and S-K (17 C.F.R. § 229.303 *et seq.*) and other SEC regulations, including truthful, complete, and accurate information with respect to, *inter alia*, the financial plans for Constar, so that the market price of the Constar Stock securities would be based on truthful, complete and accurate information.

35.    Defendants, individually and in concert, directly and indirectly, by the use of means and instrumentalities of interstate commerce of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Constar's operations. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public and engaged in acts, practices, and a course of conduct as alleged herein, in an effort to assure investors of the value of the Constar Stock. This included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Constar's operations, in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers and acquirers of the Constar Stock securities as set forth herein.

36.    Each of the defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Constar's operations and business affairs from the investing public, thereby supporting the artificially-inflated price of the Constar Stock. As

demonstrated by defendants' statements as alleged herein, if they did not have actual knowledge of the misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

37.     As a result of the dissemination of the materially false and misleading information failure to disclose material facts, as set forth herein, the market price of the Constar Stock was artificially inflated. In ignorance of the fact that market prices of Constar Stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, and the truth of any representations made to appropriate agencies as to the investing public, at the times at which any statements were made, on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by such defendants, plaintiffs purchased or otherwise acquired for value Constar Stock from October 28, 2008 through December 29, 2008 at artificially high prices and were damaged thereby when the shares declined in price in reaction to the corrective disclosures.

38.     At the time of such misstatements and omissions, plaintiffs were ignorant of their falsity, and believed them to be true. Had plaintiffs and the marketplace known of the true financial plans and condition of Constar, including in particular the plan to cancel the current equity of Constar, plaintiffs would not have purchased or otherwise acquired their Constar securities from October 28, 2008 through December 29, 2008, or, if they had purchased or otherwise acquired such securities during that time, they would not have done so at the artificially inflated prices which they had paid.

39.     By virtue of the foregoing, defendants have violated § 10(b) of the 1934 Act, and Rule 10b-5 promulgated thereunder

40.     As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages.

## COUNT II

## VIOLATION OF §20(a) OF THE EXCHANGE ACT

41.     Plaintiffs repeat and reallege the allegations of paragraphs 1-30 as if fully set forth herein.

42.     Defendants acted as controlling persons of Constar within the meaning of Section 20(a) of the Exchange Act. By reason of their positions as officers and directors of Constar, the defendants had the power and authority to cause Constar to engage in the wrongful conduct complained of herein.  The defendants made, created or were provided with or had unlimited access to copies of Constar's reports, press releases, public filings and other statements alleged by plaintiffs to be misleading prior to, or at the time they were made and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     As set forth above Constar and the defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By reason of such conduct, defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages in connection with their purchase of Constar stock.

## JURY DEMAND

45.     Plaintiffs hereby demand a trial by jury as to all issues.

        WHEREFORE, plaintiff respectfully requests that the Court enter judgment in favor of the plaintiffs as follows:

      a.      awarding compensatory damages, jointly and severally against both defendants; awarding pre and post judgment interest on the foregoing amounts as allowed by law;

      b.      awarding attorneys' fees and the costs and disbursements of this action; and

      c.      granting such other and further relief as the court may deem just and proper.

New York, NY
March 23, 2009

BRAGAR WEXLER EAGEL & SQUIRE PC

By: _____
Raymond A. Bragar (RB 1780)
Lawrence P. Eagel (LE 4505)
885 Third Avenue, Suite 3040
New York, NY 10022
Tel: (212) 308-5858
Fax: (212) 486-0462

Attorneys for Plaintiff